IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GWENESTHER MANNING,           )
                                    )
           Plaintiff,          )
                                    )    No.     04 C 7010
        v.                             )
                                    )    Judge Robert Gettleman
JOHN E. POTTER, Postmaster General,    )
United States Postal Service,           )
                                    )
           Defendant.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a six-count, pro se first amended complaint under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq., and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. Plaintiff alleges that defendant, her current employer, discriminated and retaliated against her and created a hostile work environment based on her disability and age. Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56, arguing that plaintiff is not disabled or regarded as disabled, plaintiff failed to present any similarly situated employees who were treated more favorably than she, and she did not suffer from a materially adverse employment action or a hostile work environment. For the reasons stated below, the court grants defendant's motion for summary judgment.

<u>FACTS</u>[1]

In August 1998, defendant the United States Postal Service, hired plaintiff Gwenesther

Manning as a part-time flexible letter carrier. Plaintiff had previously worked for defendant as a

machine clerk during the 1980s, but was terminated from that position because she failed to meet

the job's performance requirements. When she was re-employed by defendant in 1998, at age

41, plaintiff had no medical limitations or restrictions of any kind and was medically qualified to

perform her position. As a part-time flexible carrier at the Grand Crossing Post Office in

Chicago, Illinois, plaintiff was guaranteed four hours only on any day for which she was

scheduled and reported to work. Part-time flexible carriers are scheduled based upon the volume

of mail and are not guaranteed any overtime.[2]

---

[1]Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements
and attached exhibits, are not in dispute. The court notes that plaintiff filed more than 400
statements of additional facts and hundreds of pages of exhibits. Defendant filed a motion to
strike plaintiff's statement of additional facts for violating the 40-paragraph limit under L.R.
56.1(b), and that many of the statements are improper because they include facts redundant of
defendant's statement of facts, immaterial facts, facts unsupported by the record citations,
opinions, and legal conclusions. In addition, many of plaintiff's exhibits include only portions of
documents, without clearly indicating their source, duplicate documents, and irrelevant
documents. Compounding the confusion, plaintiff utilizes different, non-consecutive page
numbers for documents submitted by defendant. Although the court appreciates that plaintiff
attempted to organize her exhibits into binders with tabs and a tables of contents, it was
exceedingly difficult for the court to locate cited documents in the record. Recognizing that
defendant's motion was well-taken but that plaintiff's is <u>pro se</u>, the court denied defendant's
motion to strike and instructed defendant that it need not reply to each paragraph. In keeping
with the court's directive, defendant filed general responses to categories of plaintiff's additional
statements. Rather than provide a full written exegesis of the challenged L.R. 56.1 statements,
the court disregards statements that are violative of L.R. 56.1. <u>See</u> <u>Ogborn v. United Food and
Commercial Workers, Local No. 881</u>, 2000 WL 1409855, at *3 (N.D.Ill. Sept. 25, 2000)("to the
extent any factual assertion has been inadequately or improperly supported, such assertions will
not be incorporated into the facts taken to be true for purposes of [summary judgment]").

[2]Plaintiff's response to this statement of fact is typical of many of her responses. She
denies the first portion, and states that the second portion is irrelevant. "Irrelevant" is not a

On January 8, 1999, plaintiff's feet began to ache while delivering mail. On January 9, 1999, plaintiff refused to deliver a second route because of pain in her feet, and plaintiff's request to go home or to defendant's medical unit was denied. The station manager offered to let plaintiff handle mail collections instead of deliveries. Plaintiff claims that she was "bamboozled" into believing that mail collections would be a "piece of cake" because she would not have to walk through snow. According to plaintiff, collections were difficult because she had to walk and stand in deep snow, and many of the mailbox locks were frozen. Plaintiff admits that she does not believe the failure to grant her leave was motivated by her age.

Plaintiff filed a workers' compensation claim with the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP") based on her foot injury and lumbar radiculopathy. Defendant placed plaintiff on limited duty on January 14, 1999, although her OWCP claim was not accepted until June 7, 2000. Plaintiff was on limited-duty status from January 1999 to January 2001, except between February 1999 and April 28, 1999, when defendant's physician released her to full duty. Plaintiff claims that defendant continued to give her work assignments outside of her documented medical restrictions, and sent her home when she refused. Plaintiff claims that she was subject to continued harassment, which resulted in a panic attack, and she sought psychiatric help. In approximately November 1999, plaintiff was diagnosed with major depressive disorder and panic disorder, and treatment by medication and therapy was recommended.

---

proper response to a statement of fact, and plaintiff's denial is not supported by her citations to the record. Accordingly, this and other statements of fact to which plaintiff improperly responded are deemed admitted. McGuire v. United Parcel Service, 152 F.3d 673, 675 (7th Cir. 1998)("An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission.").

Plaintiff has filed multiple complaints of employment discrimination and retaliation with the defendant's Equal Employment Opportunity ("EEO") office.[3]  Shortly after being rehired by defendant in 1998, plaintiff filed the first of seven employment EEO complaints, alleging that she was improperly sent home.  Her complaint was resolved short of a formal EEO hearing.  In October and December 1999, plaintiff filed her second and third EEO complaints raising claims of age and disability discrimination based on an on-the-job injury to her feet in 1999, and retaliation against several managers.

In plaintiff's second EEO complaint, she complained that during a meeting, a supervisor, Roedonther Cornell ("Cornell"), had asked several temporary mail carriers, including plaintiff, to provide their ages and contact numbers.  According to plaintiff, Cornell stated that they were to call in on their days off to see if they were needed to work, and he "demanded that we made [sic] ourselves accessible at all times."  Plaintiff alleged that Cornell overheard her telling a union steward about the meeting, forced her to leave the building, and later started showing up on her route and instructing her to walk faster.  Plaintiff also complained that her schedule was changed, she was forced to work with a foot injury, she was not allowed to attend doctor's appointments while on the clock, and she was not receiving training on casing mail.  According to plaintiff, Anudja Wilson ("Wilson"), a younger employee, returned to work while recovering

---

[3]The court notes that defendant's L.R. 56.1 statement of facts and the statement of facts in its briefs are largely a summary of plaintiff's EEO complaints, which are extensive, overlapping, and confusing.  Defendant fails to provide the court with a straight-forward chronology of the material, uncontested facts.  Defendant also combines excerpts of all seven EEO complaints into a single, four-inch thick exhibit, without tabs or separating the different complaints, contrary to L.R. 5.2(c) and this court's standing order.  This further compounds the court's difficulty assimilating the convoluted facts and reams of documents in this case.

from a foot injury and was put on light duty and allowed to work forty hours a week or more, while plaintiff did not always work forty hours a week while on limited duty.

Plaintiff's third EEO complaint alleged disability and age discrimination, retaliation, and on-going harassment. Plaintiff complained that the vehicle for her route had been reassigned to Balonda Smith ("Smith"), a younger employee, and her starting time was changed. Plaintiff also alleged that Wanda Prater ("Prater")[4], a manager, harassed her about her work restrictions by constantly asking for clarification. Plaintiff claimed that Bettye Webb ("Webb"), who worked in defendant's injury compensation unit, sent a letter to plaintiff's doctor stating that plaintiff could walk 8 hours a day, and forced her to submit to multiple evaluations regarding her OWCP claim.

Plaintiff's second and third complaints were consolidated by the EEO on December 29, 1999. After a hearing on plaintiff's second and third EEO complaints, the EEO administrative law judge issued a corrected decision dated April 10, 2003, holding that plaintiff had failed to prove her age and disability discrimination claims, but finding that plaintiff had proved retaliation. The EEO judge ordered defendant to pay plaintiff for certain hours when she was placed on administrative leave and not given more hours during other pay periods in 1999, and $1,500 in compensatory damages for plaintiff's hair loss due to stress. Defendant paid plaintiff as ordered, but plaintiff appealed the EEO judge's ruling, arguing that she had proved discrimination and that she was entitled to more compensatory damages. Plaintiff's appeal was denied in May 2004, and she filed a request for reconsideration, which was pending at the time she filed the instant lawsuit.

---

[4]The court notes plaintiff sometimes spells her name as "Prather."

Plaintiff's fourth and fifth EEO complaints, filed after the instant lawsuit but added in the amended complaint, alleged age and disability discrimination and harassment, and were consolidated.   While her fourth EEO complaint was pending, plaintiff sought EEO counseling in February 2001, complaining that the previous months she was harassed and provoked into an altercation when a supervisor refused to return an original of a doctor's statement.  Plaintiff also complained that other part-time flexible carriers received movie passes and she did not.

An EEO judge ruled on June 18, 2004, after a hearing, that plaintiff had failed to prove her allegations.  Plaintiff appealed, but withdrew her appeal to pursue the instant lawsuit. Plaintiff filed her sixth EEO complaint in June 2003, alleging disability discrimination and retaliation.  Plaintiff complained that she improperly received a bill for continuing health care benefits while on medical leave, was visited at home by defendant's employees who questioned how to contact her doctors and her social activities, and was denied a change in craft, limited duty work, and reasonable accommodations.  Plaintiff initiated her seventh EEO complaint on November 6, 2003, by seeking counseling, complaining that she was retaliated against when defendant requested medical documentation to support her leave without pay status and that her step-increases in her pay were improperly deferred while she was on leave.  Plaintiff withdrew her sixth and seventh complaints before a hearing or a ruling.

Plaintiff has not worked for defendant on a daily basis since January 22, 2001.  Plaintiff annually receives 75% of her full salary through her OWCP benefits, totaling more than $140,000.  At her deposition, plaintiff speculated that numerous officials of defendant and the U.S. Department of Labor are involved in a conspiracy to "get rid of her" to "cut back on expenses."  Plaintiff believes that John Richardson ("Richardson"), the head of human resources,

Prater, and several other managers are involved.  In particular, plaintiff alleges that Richardson is protecting Prater because she is "his woman," and that she is on defendant's "black list."

## DISCUSSION

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993).  Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990).

## I.      Counts I (ADEA) and IV (Title VII)

Count I asserts a claim under the ADEA[5], alleging that: (1) defendant treated younger employees more favorably than Manning; (2) plaintiff was forced to work six days a week to earn forty hours of pay while younger employees with less seniority who worked six days a week earned overtime; and (3) she was denied equal training.  Count IV asserts age and disability discrimination claims under Title VII.  Plaintiff alleges that she was denied equal training, her work hours were changed and reduced, she worked six days to earn forty hours and was not paid overtime, and defendant breached two mediation agreements.  Count IV also asserts that plaintiff was retaliated against for filing EEO charges.

---

[5]The court notes that the text of the count alleges that defendant violated the Rehabilitation Act, but Count I is entitled, "Violation of the ADEA" and the factual allegations make clear that Count I alleges age-based discrimination.

To state a claim for intentional discrimination and retaliation under the ADEA and Title VII, a plaintiff has two options: she may satisfy his burden of proof by offering direct evidence of discriminatory intent; or she may demonstrate such intent indirectly by following the <u>McDonnell Douglas</u> burden-shifting framework.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Oxman v. WLS-TV</u>, 846 F.2d 448, 452 (7th Cir. 1988) (extending the <u>McDonnell Douglas</u> test to ADEA cases).  Because plaintiff does not present any direct evidence of discrimination, the court assumes she is relying on the <u>McDonnell Douglas</u> formula.  Under this framework, the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.  <u>See</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 505 (1993).

Prima facie cases under the ADEA and Title VII require substantially the same elements. A plaintiff must produce evidence that: (1) she was in the protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger employees or employees not in the protected class were treated more favorably.  <u>Wyninger v. New Venture Gear, Inc.</u>, 361 F.3d 965, 978 (7th Cir. 2004) (Title VII); <u>Biolchini v. General Elec. Co.</u>, 167 F.3d 1151, 1153-54 (7th Cir. 1999) (ADEA).  Defendant argues that plaintiff has failed to create a triable issue of material fact regarding the third and fourth elements.

To show that another employee is similarly situated, plaintiff "must demonstrate that there is someone who is directly comparable to [her] in all material respects."  <u>Grayson v. O'Neill</u>, 308 F.3d 808, 819 (7th Cir. 2002).  For example, where an employee claims that she was disciplined by her employer more harshly than another employee, she must show that she is similarly situated

with respect to performance, qualifications, and conduct.  <u>Radue v. Kimberly-Clark Corp.</u>, 219 F.3d 612, 617 (7th Cir. 2000).  "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  <u>Id.</u> at 617-18.

Defendant overstates plaintiff's lack of evidence when it asserts that she fails entirely to identify any similarly situated employees.  In her statement of additional facts and her response brief, plaintiff identifies four employees who are younger than plaintiff: (1)Wilson; (2) Smith; (3) Kendrick Wright ("Wright"); and (4) Regina Allen ("Allen").  Plaintiff asserts that like plaintiff, Wilson also had a foot injury, but that Wilson was allowed to work forty hours or more per week while she was recovering.  Plaintiff asserts that Smith, Wright, and Allen were "working more hours than plaintiff," and that the vehicle assigned to plaintiff was reassigned to Smith.  Plaintiff states that "with the exception of Wilson, they all had less seniority" than plaintiff.

Although plaintiff has identified purportedly similarly situated individuals, she has failed to do so sufficiently.  Plaintiff admits that she has less seniority than Wilson and that Allen was a transitional employee, rather than a part-time flexible mail carrier like plaintiff.  In addition to effectively conceding that Wilson and Allen are not similarly situated, plaintiff cites has submitted no evidence from which a fact finder could conclude that she and the other younger employees were alike in all material respects.  <u>See</u> <u>Haywood v. Lucent Techs., Inc.</u>, 323 F.3d 524, 531-32 (7th Cir. 2003); <u>Patterson v. Avery Dennison Corp.</u>, 281 F.3d 676 (7th Cir. 2002); <u>Gordon v. United Airlines, Inc.</u>, 246 F.3d 878, 885-86 (7th Cir. 2001).

In her response brief, plaintiff fails to cite specific portions of the record in support of her assertions about the other employees, and several of the citations she does provide either do not support her assertions or were unable to be located by the court in plaintiff's voluminous filings.[6] For example, plaintiff states that Allen was a transitional employee, but the cited statement of facts do not mention Allen, and the exhibits contain employees' names without indicating their status. In support of her assertion that Wilson is similarly situated, plaintiff cites to the investigative report for her second EEO complaint, which includes statements from Supervisor Sherman Jones that Wilson was placed on a light duty assignment after injuring her foot. The investigative report does not state Wilson's position or seniority, or otherwise support plaintiff's claim that she was similarly situated. In addition, plaintiff fails to cite to any portion of the record related to the reassignment of her vehicle.

Neither plaintiff's brief nor her additional statements of fact contain any information regarding Smith or Wright, other than that they were younger, such as their job descriptions, seniority status, supervisors, work experience, or history of EEO complaints. Plaintiff has thus failed to satisfy her burden to establish similarly situated individuals, as required for ADEA and Title VII claims, and the court need not address her particularized allegations of disparate

_____

[6]The court notes that although plaintiff made some effort to organize and number her exhibits, she employs a different numbering system than defendant, sometimes fails to properly mark her exhibits or identify their source, and generally overloads the court with more paper than it can properly review without more effective guidance from plaintiff. "[J]udges are not compelled to root through the record like a pig hunting for truffles." See, e.g., Lopez v. Micro Center Sales Corp, 2003 WL 22706957, at *1 n.2 (N.D.Ill. Nov. 17, 2003). Nevertheless, the court has attempted to locate and review as many portions of the record cited by plaintiff as possible, and has found her evidence to be lacking.

treatment by defendant.  See Peele v. County Mut. Ins. Co., 288 F.3d 319, 331 (7th Cir. 2002)

(plaintiff's failure to offer comparables "dooms her Title VII and ADEA claims").

Accordingly, the court grants defendant's motion for summary judgment on Counts I and

IV.

## II.    Count III (hostile work environment)

Count III is entitled "Failure To Stop Harassing," and is best characterized as a hostile

work environment claim.  Plaintiff alleges in Count III that defendant has harassed her for six

years by putting her up for removal, placing her on administrative leave without pay, issuing her a

fourteen day suspension, mistakenly issuing a step/salary deferment and failing to correct the

mistake, falsifying and incorrectly completing forms related to plaintiff, and committing various

misconduct related to her medical and life insurance benefits.

To determine if the work environment was sufficiently hostile to establish a hostile work

environment claim, the court looks to several factors, including the "frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  Rizzo v. Sheahan, 266 F.3d 705, 712 (7th Cir. 2001).  Hostile work environment

claimants must show that they were singled out because of their membership in a protected class,

and that the treatment was so severe and pervasive as to alter the conditions of the victim's

employment in a significant way.  Johnson v. Hondo, Inc., 125 F.3d 408, 415 (7th Cir. 1997).

Defendant argues that plaintiff has failed to create a material issue of dispute fact regarding either element.[7]

Neither the complaint nor plaintiff's response to the summary judgment motion specifies whether her hostile work environment claim is based on age or disability animus, and the court assumes that it is based on both. In the fact section of her brief, plaintiff summarizes all seven of her EEO charges, and cites the investigative records and other exhibits that document her previous allegations of harassment and unfair treatment. In support of her opposition to summary judgment, plaintiff relies primarily on her own previous testimony, which is insufficient to raise a triable issue of material fact. Evans v. City of Chicago, 434 F.3d 916, 933 (7th Cir. 2006) ("[T]he self-serving affidavit of a plaintiff is *ipso facto*, insufficient to create an issue of material."), see also Buie v. Quad/Graphics, Inc., 366 F.3d 496, 504 (7th Cir. 2004) ("self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are 'without factual support in the record'") (quoting Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993)).

Plaintiff's hostile work environment allegations fall into two general categories. First, plaintiff alleges that defendant took certain actions against her. Second, plaintiff alleges that defendant's employees, including managers and supervisors, harassed her. For the reasons discussed below, plaintiff has failed to create a triable issue of material fact regarding either category.

---

[7]Defendant also argues that the Seventh Circuit has not held that hostile work environment claims can be based on age or disability harassment. Racicot v. Wal-Mart Stores, Inc., 414 F.3d 675, 678 (7th Cir. 2005) (age); Conley v. Vill. of Bedford Park, 215 F.3d 703, 712-713 (7th Cir. 2000) (disability). Because the court grants defendant's motion for summary judgment, it need not resolve this question.

## A.    Adverse actions

According to plaintiff, defendant's management discriminated against her based on her disability after she filed an OWCP claim[8] by changing her start time and reducing her work hours, and that after plaintiff's request for leave were denied, management forced plaintiff to work outside of her medical restrictions.

Plaintiff fails to respond to defendant's argument that she complains largely about things that are not adverse actions, such as changed work schedules, disciplinary suspensions that were rescinded, denials of leave requests, or other actions that caused no "quantitative or qualitative change in the terms or conditions of employment."  Herron v. DaimlerChrysler Corp., 388 F.3d 293, 301-02 (7th Cir. 2004); see also Griffin v. Potter, 356 F.3d 824, 829 (7th Cir. 2004) (change in shift, lengthened commute, unfair discipline, unfavorable evaluation, difficult assignments, refusal to approve annual leave request, and denial of parking permit do not constitute adverse actions); Ajayi v. Aramark Bus Services, Inc., 336 F.3d 520, 531 (7th Cir. 2003) (absent "material harm," actions are not adverse).  In addition, plaintiff fails to provide evidence that many of these allegedly adverse actions were undertaken for discriminatory reasons.  For example, she claims that she was unfairly denied requests for sick leave, but she fails to articulate how defendant's action did not follow procedure for approving or denying leave requests or to cite applicable portions of the record.  See Campbell v. Henderson, 2002 WL 1732361, at *6 (N.D.Ill. July 26, 2002) (plaintiff fails to satisfy prima facie case that leave was denied improperly).

---

[8]The court notes that to the extent that plaintiff is attempting to assert a retaliation claim based on her filing of a OWCP claim in Count II or Count III, discussed below, it also fails because she cannot establish an adverse action. See Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 899-902 (7th Cir. 2003) (an adverse action is essential for a retaliation claim); Austin-Edwards v. Loyola University Medical Center, 2004 WL 1243940, at *7 (same).

The fact section of plaintiff's brief contains allegations not referenced in the argument section, including that Cornell threatened to terminate her after overhearing her tell a union steward that he had asked employees to provide their ages, and that she was "put up for removal" after injuring her foot. Even if the court considers these allegations in support of her hostile work environment claim, "[a]n unfilled threat, which results in no material harm, is not materially adverse." <u>Ajayi</u>, 336 F.3d at 531. Plaintiff also asserts in her fact section that her vehicle was reassigned to a younger employee, Smith, but fails to explain how this constitutes an adverse action.

Plaintiff also fails to provide support for several of her other allegations of allegedly adverse actions. Plaintiff alleges that she was forced to work outside her medical restrictions after she told Prater that standing all day was aggravating her medical condition and requested a different assignment. The cited portions of the record indicate that defendant accommodated plaintiff's established work restrictions known to defendant at that time, which did not include a standing restriction, and plaintiff fails to provide any evidence to the contrary. <u>See</u> <u>Campbell v. Henderson</u>, 2002 WL 1732361, at *6 (N.D.Ill. July 26, 2002) (plaintiff fails to create prima facie case where she presents no evidence of how defendant failed to honor medical restrictions or that defendant was aware of restrictions).

**B.     Harassment**

Plaintiff alleges that she was harassed by various managers and supervisors based on her age and disability. A hostile work environment "is one that is 'permeated with discriminatory intimidation, ridicule, and insult," as judged by both a subjective and objective standard. <u>Racicot v. Wal-Mart Stores, Inc.</u>, 414 F.3d 675, 678 (7th Cir. 2005)(age); <u>Conley v. Vill. of Bedford Park</u>,

215 F.3d 703, 712-14 (7th Cir. 2000)(disability). Plaintiff has failed to create a triable issue of material fact that the alleged hostility of supervisors, managers, or other employees of defendant amounted to an adverse employment action. General hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive. Griffin, 356 F.3d at 829.

Plaintiff alleges that Cornell harassed her based on her age when he asked employees to provide their names and ages at a meeting. Plaintiff provides no citation to the record in support of this allegation, although the court has reviewed her second EEO complaint in which she discussed Cornell's actions. More importantly, asking for employees' ages clearly does not rise to the level of harassment required to establish a hostile work environment claims. In the fact section of her brief, plaintiff asserts that Cornell also began "showing up on her route demanding that she walk faster" and verbally assaulted her by yelling that she "get out of his building." First, plaintiff again relies on her self-serving testimony from the EEO investigation only, which defendant denies, and which is not sufficient to create a question of fact. See, e.g., Evans, 434 F.3d at 933. Second, Cornell's alleged harassment, which occurred on a handful of occasions only, does not rise to the level of severe or pervasive harassment.

Plaintiff alleges that after she filed her OWCP claim, management began contacting the injury compensation office and requesting that plaintiff be investigated and harassed plaintiff "due to her restrictions." Plaintiff also alleges that letters written in 1999 and 2000 by Webb, a former workers' compensation manager for defendant, evidence harassment. Plaintiff cites letters that Webb wrote to U.S. Department of Labor claims examiners, and to two doctors who submitted narrative reports regarding plaintiff's foot injury and her work restrictions. In the

letters, Webb asks the doctors to clarify their reports, including the extent of plaintiff's walking

restrictions, and asks the claims examiner to advise defendant whether the doctors' reports qualify

plaintiff for a modified job offer. Webb also wrote several letters to the U.S. Department of

Labor recommending that certain claims by plaintiff be denied because they were redundant of a

still-pending workers' compensation claim or because plaintiff was seeking reimbursement for

medical expenses unrelated to the injuries claimed by plaintiff. Each of these letters appear well

within Webb's purview as a injury compensation specialist for defendant, were not addressed to

plaintiff, and do not suggest harassment of her. See Mannie v. Potter, 394 F.3d 977, 983 (7th Cir.

2005) (derogatory statements regarding the plaintiff's mental condition made out of the plaintiff's

hearing did not demonstrate hostile work environment).

Plaintiff also cites a fax sent to Prater on July 5, 2000, from an unknown individual in the

injury compensation unit as evidence of harassment. The fax states "Two Down!! (2 out of 3

ain't bad, huh). Have a great day! - I will!" Plaintiff alleges that this fax refers to the denial of

her stress claim. While the court agrees that if plaintiff is correct, the memo is inappropriate and

unprofessional, it was not addressed to plaintiff and thus cannot constitute harassment of her, and

in any event is not sufficiently offensive as to constitute harassment. Finally, plaintiff argues that

she was harassed based on her disability when a supervisor was "unprofessional with her causing

an altercation" when he refused to return an original doctor's statement to plaintiff, including

throwing a form at her. Even if true, such treatment does not rise to the level of a hostile work

environment.

Regarding these and other claims of harassment, plaintiff's citations to the record largely

do not support her assertions, are based on her self-serving testimony only, or do not indicate any

harassment.  For example, plaintiff cites to several letters from Prater denying plaintiff's requests for medical leave or accommodations based on plaintiff's alleged emotional stress, but nothing in either the tone or substance of Prater's letters indicates harassment.  Plaintiff also alleges that she was suspended for seven days for being absent, even though she notified the station and provided medical documentation.  Plaintiff admits, however, that her suspension was rescinded.  Again, plaintiff fails to explain how this constitutes harassment.

Plaintiff's allegations do not individually or collectively constitute age or disability-based adverse actions or harassment sufficient to establish a hostile work environment claim. Accordingly, defendant's motion for summary judgment on Count III is granted.

## III.  Count II (Rehabilitation Act)

Count II alleges that plaintiff was discriminated against in violation of the Rehabilitation Act when defendant forced her to work outside her medical restrictions, reduced her work hours, and attempted to terminate her workers' compensation claim.  Count II also alleges that defendant failed to reasonably accommodate plaintiff's disability as required by the Rehabilitation Act and failed to engage in a meaningful dialogue about reasonable accommodations.  Defendant argues that plaintiff cannot state a reasonable accommodation claim under the Rehabilitation Act because she cannot establish an adverse action, she is not disabled within the meaning of the statute, and defendant reasonably accommodated her.

Section 505 of the Rehabilitation Act provides a private right of action for federal employees alleging employment-related discrimination on the basis of a disability.  Hamm v. Runyon, 51 F.3d 721, 724 (7th Cir. 1995); 29 U.S.C. § 794a.  To establish a prima facie discrimination claim under the Rehabilitation Act, plaintiff must show that she: (1) suffers from a

substantial limitation of a major life activity (i.e., she has a disability as defined by the terms of the statute); (2) is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability. Scheerer v. Potter, 443 F.3d 916, 919 (7th Cir. 2006) (citing Peters v. City of Mauston, 311 F.3d 835, 842 (7th Cir. 2002)). As discussed above, plaintiff has failed to create a triable issue of material fact of any adverse action taken against her by defendant. Accordingly, the court grants summary judgment on plaintiff's discrimination claims under the Rehabilitation Act.          In a failure-to-accommodate case, the plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability. Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001).[9] Plaintiff must meet the threshold burden of establishing "that she is 'disabled' within the meaning of the statute." Roth v. Lutheran General Hospital, 57 F.3d 1446, 1454 (7th Cir. 1995). For purposes of the Rehabilitation Act, a person is "disabled" if he or she "has a physical or mental impairment which substantially limits one or more of such person's major life activities." Hamm, 51 F.3d at 724; 29 U.S.C. § 706(8)(B). Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Roth, 57 F.3d at 1454; 29 C.F.R. § 1613.792(c).

---

[9]Although Hoffman involved the American with Disabilities Act ("ADA"), in the employment context a failure-to-accommodate claim is the same under both statutes, and a court looks to the standards of the ADA when evaluating a claim under the Rehabilitation Act. 29 U.S.C. § 794(d) (2000); see also Dryek v. Garvey, 334 F.3d 590, 597 n.3 (7th Cir. 2003) (standards set out in the ADA are used in determining whether a violation of the Rehabilitation Act has occurred in the employment context).

Plaintiff argues that her lumbar radiculopathy and disc herniation substantially limit the major life activities of walking, standing, sitting, lifting, and working.  Plaintiff cites her work restrictions, which are listed in a June 15, 2000, physician's report as: (1) may stand 15 minutes per hour; (2) may lift, carry, and push up to five pounds; (3) no bending or stooping; and (4) sit in chair with back support.  Plaintiff also states that her arguing with defendant's management "took its toll," and she suffered a panic attack in November 1999.  Plaintiff was diagnosed with major depressive disorder with panic disorder in November 1999.

The interpretive regulations define "substantially limits" as "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which an average person in the general population can perform the same major life activity."  29 C.F.R. § 1630.2(j)(1)(ii).  For the reasons discussed below, plaintiff has failed to demonstrate that any of her conditions substantially limit a major life activity.

At her deposition, plaintiff largely refused to answer questions about her ability to walk and perform other activities outside of the workplace, arguing that such inquiries were irrelevant and "extraneous."  Despite her protests, plaintiff did admit that she can carry a bag of groceries from the car to her house, and that she is able to take care of herself physically, clean her house, and go shopping.  Plaintiff is incorrect that her activities outside of the workplace are irrelevant to the question of whether she is disabled under the Rehabilitation Act.  Indeed, such evidence is central to determining if a plaintiff has met her prima facie burden on summary judgment.  See, e.g., Moore v. J.B. Hunt Transp., Inc., 221 F.3d 944, 951 (7th Cir. 2000); Grevas v. Village of Oak Park, 235 F.Supp.2d 868, 874-75 (N.D.Ill. 2002).

In <u>Moore</u>, the plaintiff testified that he consistently walked distances of less than a mile, and his arthritis affected the "rate and pace" of his activities as opposed to his ability to perform them. The Seventh Circuit affirmed summary judgment, finding that these limitations did not constitute "significant restrictions" on the plaintiff's ability to walk when compared with the ability of the average person. <u>Id.</u> (citing <u>Talk v. Delta Airlines, Inc.</u>, 165 F.3d 1021, 1025 (5th Cir. 1999) (holding that "walk[ing] with a limp [,] mov[ing] at a significantly slower pace than the average person" and having difficulty walking in extreme cold did not constitute substantial impairment as required by the ADA (internal quotation marks omitted)); <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 106 (3rd Cir. 1996) (holding that an individual who could not walk "more than a mile or so," certainly couldn't jog," and had to "pace [himself] slower" when going upstairs was not substantially limited in the major life activity of working (internal quotations omitted))).

In the instant case, plaintiff has failed to produce any evidence that she is substantially limited in the major life activity of walking due to her back injury, beyond her work restrictions, which do not relate directly to walking and do not address her ability to walk in general.[10] <u>See Mays v. Pincipi</u>, 301 F.3d 866, 869 (7th Cir. 2002) ("The number of Americans restricted by back problems to light work is legion. They are not disabled.").

Similarly, plaintiff has failed to produce any evidence that her depression substantially limits any major life activity. Depression can constitute a "mental impairment" under the ADA, <u>Krocka v. City of Chicago</u>, 203 F.3d 507, 512 (7th Cir. 2000), but a plaintiff must produce

---

[10]Plaintiff fails to provide any authority in support of her assertion that standing, sitting, and lifting are major life activities under the Rehabilitation Act. Even assuming that they are, plaintiff provides no more support for her conclusory statement that she is limited in the ability to perform these tasks than for her failed walking claim.

evidence that her depression substantially limits a major life activity. See Skorup v. Modern Door Corp., 153 F.3d 512, 514 (7th Cir. 1998) (the Rehabilitation Act "is not a general protection of medically afflicted persons."). The only record citations provided by plaintiff in her response brief regarding her depression are citations to defendant's employee handbooks, plaintiff's requests that her "stress" be accommodated, and a doctor's memorandum diagnosing plaintiff with stress and depression. What the Rehabilitation Act requires, however, "is not simply a diagnosis or plaintiff's self-serving requests, but a record reflecting the kind of impairment that would impose a substantial limitation on one or more of plaintiff's major life activities." Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 510 n.7 (7th Cir. 1998). Plaintiff also submitted an affidavit stating that she continues to "feel fatigued, experience dizziness, and feel fearful," which is insufficient to create a triable question of material fact whether plaintiff's depression substantially limits a major life activity. See Stein v. Ashcroft, 284 F.3d 721, 727 (7th Cir. 2002) (citing Contreras v. Suncast Corp., 237 F.3d 756, 764 (7th Cir. 2001) ("Bald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact as to whether an impairment has substantially limited a major life activity."))

Plaintiff also asserts that she is significantly restricted in the major life activity of working. To demonstrate a significant limitation on her ability to work, a plaintiff must show that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Davidson, 133 F.3d at 506. At most, plaintiff has produced some evidence that she was unable to perform her mail carrier job or perhaps to work for defendant at all, given that her

time there allegedly caused her great emotional stress.  The inability to perform a particular job for a particular employer, however, is not a substantial limitation on working.  <u>Skorup v. Modern Door Corp.</u>, 153 F.3d 512, 514 (7th Cir. 1998).  Indeed, plaintiff testified at her deposition that she is able to perform clerical jobs in the private sector, as demonstrated in part by her prosecution of the instant lawsuit, but that she and defendant are "stuck with each other" because she was injured on the job.  <u>See</u> <u>Davidson</u>, 133 F.3d at 506 (plaintiff must demonstrate that she is significantly restricted from performing a broad range of jobs).

Because plaintiff has failed to create a triable issue of material fact that she is disabled under the Rehabilitation Act, the court need not consider whether defendant reasonably accommodated her.  Accordingly, the court grants defendant's motion for summary judgment for Count II.

## IV.     FECA (Count V) and FTCA (Count VI)

Count V alleges that defendant violated the FECA by failing to promptly authorize plaintiff's medical treatment after her foot injury, altering an accident report form, and attempting to have plaintiff's OWCP claim terminated.  The FECA is the exclusive avenue of redress for a federal worker's claim against the government for work-related injuries.  <u>See</u> <u>Lockheed Aircraft Corp. v. United States</u>, 460 U.S. 190, 193-94 (1983).  Plaintiff's complaint does not specifically allege a tort claim, and the injuries she alleges in her FECA count do not fit the general pattern of FECA claims for on-the-job physical injuries.  In addition, it is the Secretary of Labor, not a court of law, who decides claims brought under the FECA.  The Secretary's decision are final and are not subject to judicial review.  <u>See</u> 5 U.S.C. §§ 8128(b);

see also Ezekiel v. Michel, 66 F.3d 894, 898 (7th Cir. 1995) (district court lacks subject matter jurisdiction over federal employee's FECA claim).

Plaintiff fails to respond to defendant's jurisdictional argument. Accordingly, the court grants defendant's motion for summary judgment on Count V.

Count VI asserts an FTCA claim, alleging that defendant refused to refund plaintiff's insurance premiums, failed to correct plaintiff's pay grade, continues to deduct insurance premiums, and falsified information regarding plaintiff on an OSHA report. Defendant argues that plaintiff's FTCA claim is barred because she failed to file an administrative claim with the Postal Service, as the statute requires. 28 U.S.C. § 2675(a) ("an action shall not be instituted upon a claim against the United States for money damages" unless the claimant has first exhausted his administrative remedies); see also Kanar v. United States, 118 F.3d 527, 528 (7th Cir. 1997) ("No one may file suit under the [FTCA] without first making an administrative claim.").

As with her FECA claim, plaintiff's FTCA claim does not fit the usual mold of actionable injuries caused by federal employees, and she fails to state a tort claim. In addition, plaintiff fails to respond to defendant's argument that her FTCA claim is barred because she failed to file the appropriate administrative action. Accordingly, the court grants defendant's motion for summary judgment on Count VI.

## CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment as to all counts of plaintiff's fourth amended complaint. Each of the parties are to pay her or its own costs.

**ENTER:**     September 15, 2006

Robert W. Gettleman
United States District Judge